IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:08-CV-146-BR

| | | |
|---|---|---|
| CAROL LUCARELLI, | ) | |
| Special Administratix of the | ) | |
| Estate of JAMES DENNIS TAYLOR | ) | |
| deceased; ELAINE TAYLOR, Personal | ) | |
| Representative and surviving heir of | ) | |
| JAMES DENNIS TAYLOR, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| DVA RENTAL HEALTHCARE, INC. | ) | |
| f/k/a GAMBRO HEALTHCARE INC., | ) | |
| | ) | |
| *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on the Defendants' Motion to Dismiss and Motion to Strike. **[DE-46]**. Plaintiffs have responded to these motions **[DE-48]**, and Defendants have

1

filed a reply. **[DE-49]**.[1] Accordingly, this matter is ripe for disposition.  For the reasons set forth below, it is RECOMMENDED that the Defendants' Motion to Dismiss be DENIED in part and GRANTED in part and that the Defendants' Motion to Strike be GRANTED in part and DENIED in part.

I.     STATEMENT OF THE CASE

Plaintiffs, Carol Lucarelli and Elaine Taylor (hereinafter "Plaintiffs"), instituted this negligence action in the District Court for Clark County, Nevada by filing a complaint against Defendants, DVA Renal Healthcare, Inc. f/k/a Gambro Healthcare, Inc., and DOES 1-20 inclusive (hereinafter "DRH") on June 6, 2007. **[DE 1-2]**.  On July 26, 2007, DRH removed the case to the United States District Court for the District of Nevada. **[DE-1]**.  Plaintiffs then moved to remand the case back to state court. **[DE-4]**.  DRH filed a motion to dismiss Plaintiffs' complaint on August 1, 2007. **[DE-5]**.  Subsequently, on August 13, 2007, Plaintiffs responded to DRH's motion to dismiss and also filed a request to stay all proceedings pending the disposition of their motion to remand. **[DE-8]**.  On September 25, 2007, DRH filed a motion to transfer the action from the United States District Court for the District of Nevada to the United States District Court for the Eastern District of North Carolina. **[DE-16]**.  Ultimately, on March 7, 2008 the District Court for the District of Nevada: 1) denied Plaintiffs' motion to remand; 2) denied Plaintiffs' motion to stay as moot; 3) denied DRH's motion to dismiss the case as moot; and 4) granted DRH's motion to

---

[1] Plaintiffs filed a motion to supplement their response. [DE-50].  That motion is GRANTED.

transfer the action to the Eastern District of North Carolina. **[DE-28]**.

After the case was transferred to this district, DRH filed another motion to dismiss Plaintiffs' complaint. **[DE-39]**. In an order dated September 23, 2008, Judge W. Earl Britt denied DRH's motion to dismiss without prejudice. **[DE-44]**. Specifically, Judge Britt indicated that Plaintiffs should have the opportunity to amend their complaint to clarify their claims and overcome any alleged defects in their pleading. To that end, Plaintiffs filed a second amended complaint against DRH on October 2, 2008. **[DE-45]**. Now before the Court is DRH's Motion to Dismiss Plaintiffs' Second Amended Complaint and its Motion to Strike paragraphs from Plaintiffs' Second Amended Complaint. **[DE-46]**.

## II. STATEMENT OF THE FACTS

The following recitation of facts are based on Plaintiffs' Second Amended Complaint. **[DE-45]**. The Court assumes that the allegations of the complaint are true and construes them in a light most favorable to Plaintiffs. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). DRH is a wholly-owned subsidiary of DaVita, Inc. **[DE-45, p. 2, ¶ 7]**. DaVita provides outpatient renal dialysis for patients with end stage renal disease both directly, and through its subsidiaries such as DRH. **[DE-45, p. 2, ¶ 7]**. Prior to 1995, many of DaVita's subsidiaries were owned by various individuals, entities, and corporations across the country. **[DE-45, p. 2, ¶ 8].** However, in 1995, Gambro Healthcare (hereinafter "Gambro") began to purchase these independently owned facilities and centralized their operations with the company. **[DE-45, p. 2, ¶ 8]**. As a result, although Gambro's subsidiaries are separate

3

companies, virtually all of their operations are controlled by Gambro. **[DE-45, p. 3, ¶ 8]**.

The decedent, James Dennis Taylor (hereinafter "Mr. Taylor"), received hemodialysis[2] at a treatment facility operated by DRH in Wilson, North Carolina until May 2005. **[DE-45, p. 2, ¶3]**. Over the course of his hemodialysis, Mr. Taylor developed inflammatory responses from exposure to increased bacterial contaminants in DRH's hemodialysis equipment. **[DE-45, p. 7, ¶ 18]**. As a result of this exposure, Mr. Taylor suffered from aggravation of his other medical conditions, which caused his death on June 15, 2005. **[DE-45, p. 7, ¶ 19]**.

In approximately 2000, Gambro began to research problems with the hemodialysis that was provided by subsidiaries such as DRH. **[DE-45, p. 3, ¶ 11]**. The research "included, but was not limited to, inquiry into increased biofilm-associated mycrobacteria and other biological contaminants" in the water and systems that were used to provide the hemodialysis treatment. **[DE-45, p.3-4, ¶¶ 12,13]**. The centralized ownership, management, and research at Gambro and DRH resulted in the discovery of inexpensive alternatives to remedy the increased biofilm-associated problems at the facilities that were used by Mr. Taylor. **[DE-45, p. 4, ¶ 14]**. However, despite these findings, DRH decided to "disregard such undertaking and research resulting in [Mr. Taylor] being exposed to the injurious and deadly levels of biofilm-associated organisms and contaminants, which proximately caused" his injuries. **[DE-45, p. 4, ¶ 14]**. As a result, Plaintiffs filed suit against DRH seeking relief

---

[2] Hemodialysis is the process of removing blood from an artery, purifying it by dialysis, adding vital substances, and returning it to a vein. http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

4

based on the theories of negligence under the doctrine of res ipsa loquitur, corporate negligence, and negligent undertaking. **[DE-45, p. 7, ¶¶ 17(j), 19]**.

### III. STANDARD OF REVIEW

#### A. <u>Choice of Law</u>

This diversity action was transferred from the District of Nevada pursuant to 28 U.S.C. § 1404(a). **[DE-28]**. Whenever there is a change of venue under § 1404(a), "the transferee district court [is] obligated to apply the state law that would have been applied if there had been no change of venue." Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). Therefore, this Court is bound by Nevada choice of law principles to determine what state law will govern this dispute. Id.; see also, Volvo Const. Equip. North America, Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600-601 (4th Cir. 2004). With respect to tort law claims, the Supreme Court of Nevada has concluded that "the Second Restatement's most significant relationship test governs choice of law issues . . . unless another, more specific section of the Second Restatement applies to the particular tort." Gen. Motors Corp. v. Eighth Judicial Dist. Court, 134 P.3d 111, 116 (Nev. 2006).

In this case, Plaintiffs' decedent, Mr. Taylor, was injured in Wilson, North Carolina at DRH's hemodialysis facility. **[DE-45, ¶ 2]**. For personal injury cases, the Restatement's "most significant relationship test" provides "that the rights and liabilities of the parties are governed by the 'local law of the state where the injury occurred' unless 'some other state has a more significant relationship' to the occurrence. . . ." Gen. Motors Corp., 134 P.3d at 116 (quoting Restatement (Second) of Conflict of Laws, § 146 (1971)). Thus, based on the

5

"most significant relationship test," North Carolina tort law will govern this dispute.

## IV.     MOTION TO DISMISS

### A.     Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint.  Such a motion should not be granted unless it appears certain that plaintiff can prove no set of facts that would support his claim and entitle him to relief.  See Mylan Lab. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a motion to dismiss, the court assumes that the allegations of the complaint are true and construes them in a light most favorable to the plaintiff.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).

### B.     Analysis

DRH contends that the Court should dismiss Plaintiffs' Second Amended Complaint because it fails to  plead any cognizable claim **[DE-47]**.  The Court will examine DRH's arguments in turn.

#### 1.     Research

In Plaintiffs' Second Amended Complaint, they aver that DRH should be held liable for Mr. Taylor's injuries because its "disregard for research developed prior to [Mr. Taylor's] inflammatory responses to his hemodialysis treatment, directly and proximately resulted in his death on June 15, 2005." **[DE-45, p. 7, ¶ 19]**.  DRH challenges this allegation by arguing that North Carolina law does not recognize a "duty to go into the business of scientific research and product development as a condition of operating hemodialysis clinics and

6

accepting patients like Mr. Taylor." **[DE-47, p. 4]**. However, DRH's argument is inapposite. The allegations regarding DRH's research are directly related to its claims for corporate negligence and negligent undertaking. They argue that DRH negligently ignored research that it had already conducted. Plaintiffs do not allege that DRH has a "duty to go into the business of scientific research and product development." Therefore, the undersigned RECOMMENDS that DRH's Motion to Dismiss Plaintiffs' Second Amended Complaint be DENIED to the extent it relies on this argument.

**2.     Corporate Negligence**

The Supreme Court of North Carolina has explained that the doctrine of corporate negligence can be utilized to impose liability on a hospital or a health care provider if it has breached a duty that it owes to a patient. Blanton v. Moses H. Cone Mem'l Hosp., Inc., 354 S.E.2d 455, 457 (N.C. 1987); see also, Iodice v. United States, 289 F.3d 270, 276 (4th Cir. 2002) (stating that "North Carolina . . . permit[s] a proper plaintiff to bring ordinary negligence claims . . . against a health care provider"). Corporate negligence is "no more than the application of [the] common law principles of negligence. . . ." Blanton, 354 S.E.2d at 457.     Determining if a defendant should be held liable for corporate negligence will depend on whether: 1) the defendant owed a duty of care to the plaintiff, 2) the defendant violated that duty; and 3) the violation of that duty proximately caused plaintiff's injuries. Id.  North Carolina courts have recognized several duties that a hospital owes to its patients. For example, hospitals have a duty to exercise ordinary care in the selection of their agents. Blanton, 354 S.E.2d at 458 (citing Hoke v. Glenn, 83 S.E. 807, 808 (N.C. 1914)), *overruled*

7

*on other grounds* by Rabon v. Rowan Mem'l Hosp., Inc., 152 S.E.2d 485 (N.C. 1967). Hospitals also have a duty of care in "the selection, inspection, and maintenance of [its] equipment" and a duty to "make reasonable inspection and remedy any defects discoverable by inspection." Payne v. Garvey, 142 S.E.2d 159, 161 (1965) (per curiam). Furthermore, courts have suggested that "a hospital could be found negligent for its failure to promulgate adequate safety rules relating to the handling, storage and administering of medications." Bost v. Riley, 262 S.E.2d 391, 396 (N.C. Ct. App. 1980) (citing Habuda v. Rex Hospital Inc., 164 S.E. 2d 17, 21 (1968)).

In this case, DRH asserts that Plaintiffs have failed to plead any cognizable claim for corporate negligence under North Carolina law. **[DE-47, pgs. 5-8]**; **[DE-49, pgs. 3-4]**. Plaintiffs' Second Amended Complaint alleges that DRH conducted research in 2000 that disclosed that there was a significant level of biological contaminants in its hemodialysis system. **[DE-45, p. 5, ¶ 17(a)]**. However, DRH failed to utilize research-supported technology that could have inexpensively monitored this contamination. **[DE-45, p. 5, ¶ 17(a)-(b)]**.

Plaintiffs further allege that DRH failed to "assure that its equipment did not pose a significantly increased risk of injury or death . . . from . . . unreasonably high accumulation of biofilm and ineffective and/or untimely disinfection." **[DE-45, p. 7, ¶ 17(g)]**. In addition, Plaintiffs assert that DRH failed to exercise reasonable care "in the quality assurance, quality control and/or evaluation of hemodialysis treatment at the facility owned and operated by DRH in that it knew or should have known its use, and continued re-use of hemodialysis

8

equipment and systems, caused a significantly increased risk of bodily harm or death to Plaintiffs' decedent." **[DE-45, p. 7, ¶ 17(h)]**.

DRH contends that Plaintiffs' allegations imply a "duty to go into the business of scientific research or product development," which has not been recognized as a basis for a corporate negligence claim under North Carolina law. **[DE-47, p. 5, 7]**. However, as noted above, DRH's argument mischaracterizes the nature of Plaintiffs' complaint. Plaintiffs have alleged that DRH actually conducted research that revealed increased biofilm-associated bacteria and other contaminants had been plaguing its equipment and treatment system. Moreover, Plaintiffs allege that this research revealed inexpensive remedies to address this issue. By disregarding these facts, Plaintiffs argue that DRH proximately caused Mr. Taylor's injuries.

Plaintiffs' allegations are analogous to the duty of hospitals and health care providers to inspect and maintain its equipment and remedy any defects that are discoverable on inspection. Payne, 142 S.E.2d at 161. This duty has been recognized by the North Carolina Supreme Court as a basis for a corporate negligence claim and thus provides a viable claim for relief. Id. Therefore, Plaintiffs have made sufficient factual allegations to survive a motion to dismiss. Accordingly, the undersigned RECOMMENDS that DRH's Motion to Dismiss Plaintiffs' corporate negligence claim be DENIED.

### 3. Negligent Undertaking

Negligent undertaking is based on the Restatement (Second) of Torts § 324A, which provides:

9

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Dawkins v. United States, 226 F. Supp. 2d 750, 755 (M.D.N.C. 2002) (quoting Restatement (Second) of Torts § 324A (1965)).

DRH has moved to dismiss Plaintiffs' negligent undertaking claim on the grounds that it is not recognized by North Carolina law. **[DE-47, p. 9]**.

The North Carolina Court of Appeals has applied the doctrine of negligent undertaking in several contexts. See Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co., 268 S.E.2d 12, 15-17 (N.C. Ct. App. 1980) (citing § 324A in the analysis of an architect liability claim); see also, Prince v. Wright, 541 S.E.2d 191, 195 (N.C. Ct. App. 2000) (quoting Quail Hollow for the proposition that "[u]nder certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for injuries resulting from his failure to exercise reasonable care in such undertaking"). Most notably, in Mozingo v. Pitt County Mem'l Hosp., Inc., 400 S.E.2d 747, 752 (N.C. Ct. App. 1991), the North Carolina Court of Applies cited § 324A and Quail Hollow in the context of a medical malpractice claim. Thus, the North Carolina Court of Appeals has recognized negligent undertaking as a claim under § 324A.

10

Conversely, although there is some authority to support a claim for negligent undertaking in North Carolina Court of Appeals decisions, the North Carolina Supreme Court has yet to expressly recognize a tort law duty based on § 324A. Dawkins, 226 F. Supp. 2d at 755. "In a case such as this, in which no precise state precedent exists, the court must determine how the state supreme court would rule in a similar situation." Id. at 756 (citing Commissioner v. Estate of Bosch, 387 U.S. 456, 464-65 (1967)). Based on authority from the North Carolina Supreme Court, it is unlikely that it would conclude that § 324A should be relied on as representative of North Carolina law. See Cassell v. Collins, 472 S.E.2d 770, 772 (N.C. 1996) ("reemphasiz[ing] yet again that the Restatement of Torts is *not* North Carolina law") (emphasis in the original); see also, Hedrick v. Rains, 477 S.E.2d 171, 172 (N.C. 1996) (per curiam) (noting with disapproval the Court of Appeals' citation of the Restatement (Second) of Torts as authority and stating that "[e]xcept as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law"). Indeed, when it affirmed the Court of Appeals in Mozingo, the Supreme Court specifically stated that it was doing so for "reasons . . . different from those relied upon in the opinion of the Court of Appeals." Mozingo v. Pitt County Mem'l Hosp., Inc., 415 S.E.2d 341, 347 (N.C. 1992). Accordingly, the undersigned RECOMMENDS that DRH's motion to dismiss Plaintiffs' negligent undertaking claim be GRANTED.

**4.     Medical Malpractice**

Medical malpractice claims "'arise[] out of the furnishing or failure to furnish professional services' by a health care provider." Iodice, 289 F.3d at 276 (quoting N.C. Gen.

11

Stat. § 90-21.11). Conversely, negligence claims against a health care provider that do not "arise out of" the "furnishing" of "professional services," are not medical malpractice claims, and are governed by ordinary negligence principles. Iodice, 289 F.3d at 276 (citing Estate of Waters v. Jarman, 547 S.E.2d 142, 145-56). To distinguish between these two claims, North Carolina courts have held that "negligence actions brought against a hospital which pertain to clinical patient care constitute medical malpractice claims; however, where the . . . negligence claim arises out of policy, management or administrative decisions [of a facility] . . . the claim is instead derived from ordinary negligence principles." Estate of Waters, 547 S.E. at 145.

The distinction between medical malpractice and ordinary negligence claims is significant because under Rule 9(j) of the North Carolina Rules of Civil Procedure, any complaint that alleges a medical malpractice claim by a health care provider will be dismissed unless it meets certain criteria. Estate of Waters, 547 S.E.2d at 143-44. Specifically, the complaint must state that "the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." Id. (quoting N.C. Gen. Stat. § 1A-1, Rule 9(j)).

DRH argues that Plaintiffs' claims must be dismissed because they fall within the category of medical malpractice and Plaintiffs' complaint does not satisfy the requirements of Rule 9(j). **[DE-47, p. 10]**; **[DE-49, p. 6]**. In support of its argument, DRH contends that

12

some of the allegations in Plaintiffs' complaint "are exclusively related to the medical care" that Plaintiffs' decedent received through its hemodialysis treatment. **[DE-49, p. 7]**.

A review of the allegations in the complaint reveals that Plaintiffs' claims are more focused on the condition, inspection, and maintenance of the equipment used for the hemodialysis treatment, rather than the medical care that was rendered. Estate of Waters, 547 S.E.2d at 143-44. As a result, because Plaintiffs' claims involve the "policy, management or administrative decisions" of DRH's facilities, they are governed by ordinary negligence principles, which negates the need to abide by the requirements under Rule 9(j). Id. Accordingly, the undersigned RECOMMENDS that the portion of DRH's motion to dismiss Plaintiffs' complaint relying upon this argument be DENIED.

In addition, because Plaintiffs have specifically argued that they do not intend to raise a medical malpractice claim, DRH has requested that "in the event that this Court holds that Plaintiffs' claims are not for medical malpractice and that no expert certification is required, . . . Plaintiffs be estopped from amending their Complaint to add any such claim in the future." **[DE-49, p. 7, n. 4]**. The undersigned does not recommend that Plaintiff be estopped "from amending their Complaint to add any such claim." Rather, it is RECOMMENDED that any motion to amend the Complaint which would add a medical malpractice claim be strongly disfavored.

## V.     MOTION TO STRIKE

13

### A. Standard

A motion to strike under Rule 12(f)(2) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of this motion is to conserve judicial resources by avoiding the litigation of unnecessary issues. Simaan, Inc. v. BP Prods. N. Am, Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005). Nonetheless, motions to strike are generally disfavored "'because striking a portion of a pleading is a drastic remedy and . . . is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). Therefore, these motions should only be granted when a movant can demonstrate that the challenged material has "no possible bearing upon the subject matter of the litigation and . . . may [cause] prejudice. . . ." Simaan, Inc., 395 F. Supp at 278.

### B. Analysis

DRH moves to strike Paragraphs 9 and 11 from Plaintiff's Second Amended complaint, because they contain background information about Gambro's federal investigation for healthcare fraud in 2001. **[DE-45, p. 3]**. DRH contends that this information is irrelevant to Mr. Taylor's injuries and therefore, was only included to prejudice them. **[DE-47, p. 14]**. Conversely, Plaintiffs argue that this information shows "that efforts, other than providing the research remedies, were occurring at a time when Defendant's predecessor received treatment" and thus "have relevancy to the circumstances

14

surrounding the failure and breach of duty alleged in this case." **[DE-48, p. 13]**. The Court finds Plaintiffs' argument unpersuasive.

Plaintiffs' remaining claims against DRH involve negligence under the doctrine of *res ipsa loquitur* and corporate negligence. **[DE-45, p. 7, ¶¶ 17(j), 19]**. Under the doctrine of *res ipsa loquitur*, Plaintiffs must prove that an instrumentality, under the control and/or management of DRH, injured Mr. Taylor, and that the accident is one that does not normally occur unless DRH did not exercise due care. Snow v. Duke Power, 256 S.E.2d 227, 231 (N.C. 1979). Thus, Plaintiffs' can "prove the existence of negligence by merely establishing the circumstances of an occurrence that produces injury or damage." Id. Similarly, for corporate negligence, Plaintiffs can utilize ordinary negligence principles to prove that DRH: 1) owed a duty of care to Mr. Taylor; 2) breached that duty; and 3) that the breach proximately caused Mr. Taylor's injuries. Blanton, 354 S.E.2d at 457.

Based on the foregoing, the allegations regarding Gambro's fraud investigation in paragraph 9 and the first sentence of paragraph 11 of Plaintiffs' complaint are irrelevant and "immaterial" to the underlying subject matter of this case. F.R.C.P. 12(f)(2). They have no bearing on what caused Mr. Taylor's injuries nor do they shed light on the duty that DRH owed to Mr. Taylor in the maintenance and inspection of its hemodialysis equipment and system. Simaan, Inc., 395 F. Supp at 278. However, the latter part of paragraph 11 of Plaintiffs' complaint is relevant to this action. Here, Plaintiffs averred that "Gambro Healthcare, in approximately 2000, commenced research concerning injurious and deadly problems with the hemodialysis provided by subsidiaries such as Defendant DRH." **[DE-45,**

15

**p. 3]**. As noted *supra*, the allegations concerning DRH's research are related to their corporate negligence claim; specifically the duty that DRH owed to Mr. Taylor to inspect, maintain, and remedy defects in its equipment and systems.

Therefore, the Court RECOMMENDS that paragraph 9 and the first sentence of paragraph 11 be stricken from Plaintiffs' Complaint. It is also RECOMMENDED that DRH's motion to strike be DENIED with regard to the remainder of paragraph 11.

**VI. CONCLUSION**

For the reasons set forth above, IT IS RECOMMEND that DRH's Motion to Dismiss Plaintiffs' Second Amended Complaint **[DE-46]** be GRANTED IN PART AND DENIED IN PART. Specifically, it is RECOMMENDED that Plaintiffs' negligent undertaking claim be DISMISSED, but that DRH's Motion to Dismiss otherwise be DENIED. It is further RECOMMENDED that DRH's Motion to Strike Paragraphs 9 and 11 of Plaintiffs' Second Amended Complaint **[DE-46]** be GRANTED IN PART AND DENIED IN PART. Specifically, the undersigned RECOMMENDS that paragraph 9 and the first sentence of paragraph 11 be stricken from Plaintiffs' Complaint, but that the remainder of paragraph 11 remain in the complaint.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 26th day of January, 2009.

_____
William A. Webb
U.S. Magistrate Judge

17