UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-146

| | |
|---|---|
| CAROL LUCARELLI, Special Administratrix of the Estate of JAMES DENNIS TAYLOR, deceased; ELAINE TAYLOR, Personal Representative and surviving heir of JAMES DENNIS TAYLOR, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> DVA RENAL HEALTHCARE, INC. f/k/a GAMBRO HEALTHCARE, INC., et al., <br><br> Defendants. | O R D E R |

This matter is before the court on the 26 January 2009 Memorandum and Recommendation ("M&R") of Magistrate Judge William A. Webb on a motion to dismiss and/or strike certain allegations in plaintiffs' Second Amended Complaint by defendant DVA Renal Healthcare, Inc. (hereinafter "DRH"), and plaintiffs' objections thereto. DRH did not file any objections, but did file a response to plaintiffs' objections. In addition, on 29 December 2008, plaintiffs filed a motion to supplement their response in opposition to the motion to dismiss, to which DRH filed a response. This matter is ripe for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

DRH is a wholly-owned subsidiary of DaVita, Inc. (Second Am. Compl. ¶ 7). DaVita provides outpatient renal dialysis for patients with end stage renal disease both directly, and through its subsidiaries such as DRH. (Id.) Prior to 1995, many of DaVita's subsidiaries were owned by various individuals, entities, and corporations across the country. (Id. ¶ 8.) However, in 1995, Gambro Healthcare, Inc., which is now known as DRH, began to purchase these independently

owned facilities and centralized their operations with the company. (Id.) As a result, although DRH's subsidiaries are separate companies, virtually all of their operations are controlled by DRH. (Id.)

Plaintiff's decedent, James Dennis Taylor (hereinafter "Mr. Taylor"), received hemodialysis at a treatment facility operated by DRH in Wilson, North Carolina until May 2005. (Second Am. Compl. ¶3.) Over the course of his hemodialysis, Mr. Taylor developed inflammatory responses from exposure to increased bacterial contaminants in DRH's hemodialysis equipment. (Id. ¶ 18.) As a result of this exposure, Mr. Taylor suffered from aggravation of his other medical conditions, which caused his death on 15 June 2005. (Id. ¶ 19.)

In approximately 2000, DRH began to research problems with the hemodialysis that was provided by subsidiaries such as DRH. (Second Am. Compl. ¶ 11.) The research "included, but was not limited to, inquiry into increased biofilm-associated mycrobacteria and other biological contaminants" in the water and systems that were used to provide the hemodialysis treatment. (Id. ¶¶ 12-13.) The centralized ownership, management, and research at DRH resulted in the discovery of inexpensive alternatives to remedy the increased biofilm-associated problems at the facilities that were used by Mr. Taylor. (Id. ¶ 14.) However, despite these findings, DRH decided to "disregard such undertaking and research resulting in [Mr. Taylor] being exposed to the injurious and deadly levels of biofilm-associated organisms and contaminants, which proximately caused" his injuries. (Id. ¶ 14.)

Plaintiffs commenced this action in Nevada state court on 6 June 2007 by filing a complaint against DRH, Does 1 through 50 inclusive, and Roe Corporations 1 through 50 inclusive.[1] DRH

---

[1] The Second Amended Complaint names only DRH and Does 1 through 20 inclusive.

removed the action to the United States District Court for the District of Nevada on 26 July 2007, and that court ultimately transferred the action here by order filed 7 March 2008. Plaintiffs filed the instant second amended complaint on 2 October 2008. The complaint contains claims for *res ipsa loquitur*, corporate negligence, and negligent undertaking. (Second Am. Compl. ¶¶ 17(j), 19.) DRH seeks dismissal of all of plaintiffs' claims, but Magistrate Judge Webb recommended dismissal only of plaintiffs' negligent undertaking claim. (M&R at 16.) Magistrate Judge Webb also recommended striking "paragraph 9 and the first sentence of paragraph 11" from the second amended complaint. (Id.) Plaintiffs object to the recommendation to dismiss the negligent undertaking claim. (Pls.' Objs. at 2.)

## II. DISCUSSION

A.  Standard of Review

A party may file specific, written objections to a magistrate judge's M&R within ten days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b). The district court must conduct a *de novo* review of those portions of the M&R to which proper objections are made. 28 U.S.C. § 636(b)(1).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197 (1994). While the court must accept the plaintiff's factual allegations as true,

3

the court "need not accept the legal conclusions drawn from the facts." Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Similarly, [the court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). A complaint will survive a Rule 12(b)(6) motion to dismiss if it sets forth "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

B.  Negligent Undertaking Claim

A claim for negligent undertaking is described as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Dawkins v. United States, 226 F. Supp. 2d 750, 755 (M.D.N.C. 2002) (quoting Restatement (Second) of Torts § 324A (1965)).

This type of claim has been analyzed twice by the North Carolina Court of Appeals, once in Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co., 47 N.C. App. 518, 522 (1980), and a second time in Mozingo v. Pitt County Mem'l Hosp., Inc., 101 N.C. App. 578, 587 (1991). Magistrate Judge Webb recommends dismissal of this claim because it has never been recognized

4

by the Supreme Court of North Carolina, and "it is unlikely that [that court] would conclude that" such a claim exists under North Carolina law. (M&R at 11.) Plaintiffs contend that "sufficient developed law by the North Carolina Supreme Court exists independently to support [p]laintiff's [sic] allegations concerning [d]efendant DRH." (Pls.' Objs. M&R at 2.) However, after a review of all the cases cited by plaintiffs, the court concludes that the claim is not recognized under North Carolina law. See Dawkins, 226 F. Supp. 2d at 756 ("It is unlikely that the North Carolina Supreme Court would impose on a defendant any tort duty based on [Section 324A of] the Second Restatement of Torts."). The objection is OVERRULED.

C. Plaintiffs' Motion to Supplement

Plaintiffs seek to "provid[e] this [c]ourt with the most recent decision on nearly identical issues, by United States District Court, Western District of Louisiana[.]" (Pls.' Mot. Supp. at 1.) DRH objects on the grounds that the order is a magistrate judge's "Report and Recommendation" and therefore "not a final order" and also is not binding on this court because it applies Louisiana state law. (DRH Opp. Mot. Supp. at 2.) Local Civil Rule 7.1(g), EDNC, allows a party to file "[a] suggestion of subsequently decided *controlling* authority," (emphasis added), and of course as DRH points out, the Louisiana case is not binding on this court. At any rate, the court has read the decision, and it does not change the court's analysis. The motion is DENIED.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' objection is OVERRULED, and the court ADOPTS the M&R. DRH's motion to dismiss is ALLOWED IN PART, and plaintiffs' claim of negligent

5

undertaking is DISMISSED. Plaintiffs' motion to supplement is DENIED.

This 30 March 2009.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　　　　　　　Senior U.S. District Judge

cl/drh/tec